## John D. Locke & another *vs.* Alanson Bennett.

An auditor, appointed under the provisions of the Rev. Sts. c. 96, to hear the parties, examine their vouchers and evidence, state the accounts between them, and make report thereof to the court, is authorized to consider and determine whether a particular individual was the authorized agent of one of the parties, to purchase, on his behalf, the goods charged by the other in account against him.

The facts of this case, which was argued by *J. E. Field,* for the defendant, and by *I. Sumner,* for the plaintiffs, are stated in the opinion of the court, which was read at September term, 1852, as drawn up by

Fletcher, J. It does not appear from the bill of exceptions in this case, what was the nature of the action ; but it must be taken for granted that it was properly referred to an auditor.

The case having been referred to an auditor, when it came on for trial in the court below the plaintiffs offered the report of the auditor in evidence. The defendant objected to its admission, because the auditor passed upon the question, whether one Ray, by whom the articles charged by the plaintiff in ac-

count, against the defendant, were procured of the plaintiff, was the authorized agent of the defendant, to make the purchase of the goods charged; and moved that that part of the report be stricken out, because the auditor had no authority to pass upon the question. The court overruled the objection, and ruled that the auditor had authority to pass upon that question, as incidental to the matter referred; and instructed the jury, that the report was *primâ facie* evidence of the right of the plaintiffs to recover the amount reported by the auditor, he having found that Ray was the authorized agent of the defendant to purchase the goods charged. The jury having found a verdict for the plaintiffs, for the full amount reported by the auditor, the defendant excepts to the foregoing ruling and instructions of the court.

The single question now presented is, whether or not it was within the scope of the authority of the auditor, for the purpose of stating the account between the parties, to consider and decide the question, whether or not Ray was the authorized agent of the defendant, to purchase, on his account, the goods charged by the plaintiff, in account against the defendant. This is a very simple question in form, but one of great practical importance, vitally affecting the power, and consequently the usefulness of auditors. There are several cases in our reports, in which questions touching particular proceedings of auditors, have been raised and settled; but there is no case in which the general nature of their duties has been particularly considered, or in which their general powers have been examined and defined. It is desirable to ascertain the true principle upon which the question raised in the present case should be decided; and to do so, it is necessary to look somewhat into the nature of the duties, and the extent of the powers, of an auditor.

The office of auditor is one of great antiquity in the common law. The old action of account was in use as early as the time of Henry III., and the auditor is an essential part of the machinery in that proceeding. In that action, if the plaintiff succeeds, there are two judgments. The first is, that the defendant do account, *quod computet,* and auditors are there-

upon assigned by the court to take the account. The proceedings before the auditor are by formal pleadings, the plaintiff counting, or charging, what he claims to be due to him, and the defendant putting in a plea or discharge before the auditor, from the various items charged against him. If the pleas in discharge be traversed or denied, or their legal validity be demurred to by the plaintiff, so that the parties are at issue in law or fact, the auditor must certify the record to the court, who will either award a *venire facias* to try the issue, or give judgment on the demurrer. The necessity of sending these issues of fact and law, found before the auditor, to the court, to be there tried, before the auditor can proceed to examine the vouchers of the items of account, occasions difficulties and delays, and has, to say the least, been among the evils which have brought this action of account into disfavor and disuse. Lord Hardwicke observed, on this subject, that the opportunity which the defendant has of delaying the proceedings, by raising a succession of issues, triable in a formal way, like so many separate actions, has brought the action of account into disuse. *Ex parte Bax*, 2 Ves. Sen. 388. But still in *Godfrey* v. *Saunders*, 3 Wils. 94, the machinery of the action of account, though somewhat rusty by disuse, was operated so successfully, as to work out an account in two years, which the parties had been litigating in chancery, for the same purpose, but without success, for fourteen years. In a more recent case, this action was resorted to with success, in a case involving complicated transactions. *Baxter* v. *Hozier*, 7 Scott, 233, and 5 Bing. N. R. 288.

But, beside the evils resulting from the restricted power of the auditor, and other defects in this mode of proceeding, the action of account, itself, applies only to particular classes of accounts; so that there were some cases in which mutual accounts could scarcely be adjusted, excepting through the medium of the court of chancery. Equitable relief was originally afforded in the court of chancery, in cases of account, on the ground that the remedy, in ordinary courts of law, was unsatisfactory and inadequate; and hence it came to be laid down as a rule, that such equitable relief should be granted in

nearly all cases. The modern doctrine, as laid down by Chief Baron Alexander, is, that to induce the court of chancery to interfere in ordinary cases of account, the account must be such as could not possibly be taken, justly and fairly, in a court of law. *Frietas* v. *Dos Santos*, 1 Y. & Jerv. 576.

The course of proceeding in cases of account, in chancery, has always been, when a case comes to a hearing, at once, to refer the matter to one or more of the masters, to take the accounts. The system of referring matters of account to the master, can be traced back to the time of Lord Bacon, whose order on the subject is as follows : " But generally matters of accompt, excepting in very weighty causes, are not fit for the court, but are to be prepared by reference, with this provision, nevertheless, that the causes come first to hearing, and upon the entrance into a hearing, they may receive some direction, and be turned over to be considered and prepared." Tothill, 49. The whole business of taking and stating accounts, is done by the master. All questions of law and fact, which properly arise in the course of the proceeding, are heard and decided by him. He does not, like the auditor in the action of account, send issues to the court to be tried, but he, himself, decides all the questions as they arise, and keeps the whole business under his own control, till he reports the final result. Such is the general course of proceeding, without stopping to consider separate and special reports, or particular and special orders and instructions of the court; all the proceedings of the master being, of course, subject to the general superintending power and control of the court. The final report of the master, made in pursuance of the order of reference, may be considered as somewhat analogous to the award of an arbitrator at law, subject however to exceptions, and requiring the formal confirmation of the court. Notwithstanding the antiquity and importance of the office of master in chancery, it is understood that it has recently been wholly abolished in England, by act of parliament. The duties which have heretofore been performed by masters, are to be performed by the master of the rolls and the vice-chancellor, each to be assisted by two clerks, especially appointed for that purpose. This reference

to the judicial modes of taking accounts in England, has been made, in the hope that it might afford some aid in ascertaining the appropriate powers and duties of auditors, in taking and stating accounts under our laws.

It is believed that the action of account was never much in use in this commonwealth; and it was practically superseded by the statute of 1817, *c.* 142, which authorized the court to appoint auditors in common actions; and was wholly, and in terms, abolished by the revised statutes, *c.* 118, § 43. In the same section in which the action of account is abolished, it is provided that " when the nature of an account is such, that it cannot be conveniently and properly adjusted and settled in an action of assumpsit, it may be done upon a bill in equity to be brought in the supreme judicial court, and the said court shall hear and determine the cause, according to the course of proceedings in chancery." The course of proceedings in chancery, under this provision, would be, as we have seen, at once to refer the matter to a master in chancery, to take and state the account; before whom the whole matter would be heard and tried, and who would report the final result; and nothing would come before the court but the exceptions to the master's report.

Besides this provision for adjusting accounts by a bill in equity, provision is made in the revised statutes for the appointment of auditors in suits at law, under which provision the question in the present case arises. The appointment of auditors therefore rests upon the authority of the statute, and their powers and duties are prescribed by statute. The provisions of the revised statutes are much more full and explicit, and indicate the powers and duties of the auditors more clearly and definitely, than those of the statute of 1817. By the revised statutes, *c.* 96, it is provided as follows:

" SECT. 25. Whenever a cause is at issue, and it shall appear that the trial will require an investigation of accounts, or an examination of vouchers by the jury, the court may appoint one or more auditors to hear the parties, and examine their vouchers and evidence, and to state the accounts, and make report thereof to the court."

38*

" Sect. 27. When there is more than one auditor, they shall all meet and hear the cause, but a report by a majority of them shall be valid.

" Sect. 28. Witnesses may be summoned, and compelled to attend and testify before the auditors, in the same manner as before arbitrators or referees."

" Sect. 30. The report of the auditors, if there is no legal objection to it, may be used by either party as evidence on the trial before the jury; but it may be impeached and disproved by other evidence, produced on the trial by either party."

In the case of *Whitwell* v. *Willard*, 1 Met. 216, the question was, whether that was a case, within the statute, in which the court would appoint an auditor without consent of parties. Though all the court were of opinion that it would be highly useful to refer the case to an auditor, and that a report would much facilitate the trial, and though the terms of the statute are very general, that " whenever a cause is at issue," &c., yet a majority of the court, looking at the particular terms of the act, put a construction upon it, which excluded from its provisions the case then under consideration, against the opinion of Mr. Justice Putnam, who held, that it was the intention of the legislature to authorize the court to appoint auditors in all cases, whether of contract or tort, where there was a necessity for such an examination of a great number of particulars, as could not be made by a jury, in the ordinary course of a trial, with any reasonable degree of certainty, as to the accuracy of results. The enlarged construction put upon the statute by Mr. Justice Putnam, would enable a court of law to avail itself of the aid of an auditor in cases involving an inquiry into particulars and details, in a manner similar to that in which a court of chancery is assisted by the services of a master.

But the inquiry, in the present case, is not in regard to the power of appointing an auditor, but in regard to the power of an auditor, properly appointed. The name has probably occasioned some misapprehension as to the power of an auditor. It seems to have been supposed that an auditor, under

the statute, was the same as the auditor in the action of account at common law. But they are the same only in name. The powers of the one are by no means the measure of the powers of the other. In *Fanning* v. *Chadwick*, 3 Pick. 420, 424, Mr. Justice Wilde, in giving the opinion of the court, says: " It has been argued, that the only remedy at law, if any, is by action of account; but this action is almost obsolete, even in England, and there seems to be no necessity for reviving it here. Justice may be administered in a form more simple, and less expensive, by an action of assumpsit; especially since the court is authorized to appoint auditors. Assumpsit has now all the advantages, without the disadvantages, peculiar to an action of account." One of the disadvantages peculiar to an action of account, here referred to, it would seem, must have been the limited power of the auditor, which was removed by the enlarged power given under the statute. The above case was under the statute of 1817. The present case is under the revised statutes, the provisions of which are more full and complete, and which will now be more particularly considered.

The court are authorized to appoint one or more auditors. This enables the court to appoint such persons, and such a number of persons, as will be in every way safe and competent for the accomplishment of the business in hand, under the circumstances of each particular case. Whatever power the auditors may be held to possess, the court will see to it, that it shall be in every case intrusted to fit and competent hands, though their report is only *primâ facie* evidence, and not necessarily conclusive. The auditors are to hear the parties, and of course they are to hear them for the purpose of deciding such matters as may be heard.

But in regard to what matters are the auditors to hear the parties, and to examine their vouchers and evidence ? In the words of the statute, " they are to hear the parties; " in the most general terms; they are to hear them as to every thing, without limit, and without restriction, bearing upon the matter which they have in charge, and the duty which they have to perform; that is, taking and stating an account. They

are to hear them upon every thing material in relation to the account; every thing proper to be considered in deciding upon the merits of the claims of the respective parties. They are not only to examine vouchers, but evidence in relation to all questions arising in the investigation of accounts.

The statute further provides, that when there is more than one auditor, they shall all meet and hear the cause, but a report by a majority of them shall be valid. Here they are to hear the cause; not merely examine vouchers, and add up and subtract figures, but hear the cause, the whole cause; every thing appertaining to the matter of stating the account. The provision, for compelling witnesses to attend and testify before auditors in the same manner as before arbitrators and referees, gives to auditors the means of investigating accounts as fully, and in the same manner, as may be done by arbitrators and referees; and, providing the means, would seem to indicate that the auditors have the power of making such examination. So far as respects the investigation of accounts, therefore, the power of auditors is as general and extensive as that of arbitrators and referees; though their report is only *primâ facie* evidence, and not conclusive and binding as an award.

The statute further provides, that " the report of the auditors, if there is no legal objection to it, may be used as evidence on the trial before the jury; but it may be impeached and disproved by other evidence, produced on the trial by either party." It is but *primâ facie* evidence; but it is *primâ facie* evidence, and may change the burden of proof. But of what is it evidence? The statute does not say it shall be evidence, in a restricted sense, as to the vouchers or computations merely, but shall be evidence, in general terms; evidence of every thing properly considered by the auditor in stating the account, and of the true and just state of the account between the parties. Whatever the auditor finds necessary to do in the proper discharge of his appropriate duties, may be embraced in his report of his doings; and his report is evidence upon the trial before the jury.

It has sometimes been said, that when a question arises before an auditor, he should leave it open, to be decided by

the court and jury, and state the account in different ways, so as to meet such decision as may be made. There doubtless may be some cases, in which it might be suitable for the auditor to make different statements of the account, to meet the ultimate decision of some question; but then there may be many cases, in which it would be exceedingly perplexing, if not wholly impracticable, for an auditor to state the account in such various ways as to meet the ultimate possible decision of the various questions raised in the case. But it is sufficient that the statute does not require the auditor to make more than one statement of the accounts. He is to hear the parties, examine their vouchers and evidence, and state the accounts according to his view of the merits of the respective claims of the parties, upon a consideration of all the matters before him; and his report of his doings is evidence upon the trial. Such seems to be the general power of the auditor, as given by the statute, in the exercise of which he is enabled to afford essential aid to the court in the administration of justice; and there is no reason why the court should destroy or impair his usefulness, by imposing limitations and restrictions upon his authority, which have not been imposed by the legislature.

These general views, as to the authority of an auditor, are sustained by the decisions in particular cases in this court. In the case of *Bradley* v. *Clark*, 1 Cush. 293, it was decided that an auditor might hear and decide the question, whether or not goods charged in account were received and purchased on a barter account, as being " directly within the range of inquiry, and of course within the scope of his authority." In the case of *Jones* v. *Stevens*, 5 Met. 373, the decision turned upon the particular facts and circumstances of that case, and does not throw any light upon the inquiry as to the general powers and duties of an auditor. In the case of the *Commonwealth* v. *Cambridge*, 4 Met. 35, it was held, that an auditor might hear and decide the question as to the value of labor which was the subject of an account referred to him. In 'the case of *Barnard* v. *Stevens*, 11 Met. 297, it was held to be within the scope of the authority of an auditor, to hear and decide whether or not certain notes were due by the defendant

to the plaintiff; and that his report was *primâ facie* evidence that the notes were due.

By a statute of Vermont, it is provided that the action of account may be sustained, among other things, on book account. It is further provided that, when judgment to account is rendered, " the court shall appoint one or more judicious and disinterested men, to hear, examine and adjust the accounts between the parties." The persons so appointed are called auditors. In the case of *Stoddard* v. *Chapin*, 15 Verm. 443, it was decided, that " it is the duty of auditors to decide upon all questions of fact arising in the investigation of an account, and to deduce all inferences of fact which may be legitimately drawn from the evidence." The same doctrine has been repeatedly and fully held in numerous decisions in the same court, though the report of the auditor is there binding and conclusive as an award of referees. So in the case of *Brown* v. *Kimball*, 12 Verm. 617, it was held, that " when the plaintiff seeks to recover for labor, the particular terms of the contract under which the labor was performed, and whether the plaintiff fulfilled, or voluntarily abandoned his contract, are questions of fact, to be conclusively determined by the auditor."

But it is not necessary further to extend the inquiry as to the general powers and duties of auditors. The question now before the court, and to which alone the decision of the court applies, is a very simple one. The question is, whether it was within the power of the auditor to hear and decide the question, whether Ray was the authorized agent of the defendant, to make the purchases, on his account, of the goods charged in account against him, by the plaintiff. It is very clear that, if the auditor had not power to settle that question, he had no power to do any thing. The auditor was to state the account between the parties; but whether or not there was any account between them, depended upon the question whether Ray was the defendant's agent to make the purchases on his account. If Ray had no such authority, then the defendant had purchased no goods of the plaintiff, and there was no account between them. It was quite impossible therefore for the

auditor to state the account between the parties, without de-ciding whether or not there was any account between them to be stated. It was, in fact, simply deciding, whether the defendant purchased the goods charged against him by the plaintiff, which was clearly within the scope of the authority of the auditor. *Exceptions overruled.*